IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CLIMIE TAYLOR<br><br>     Plaintiff,<br>v.<br><br>OHIO DEPARTMENT OF YOUTH<br>SERVICES, CIRCLEVILLE JUVENILE<br>CORRECTIONAL FACILITY<br><br>     Defendant. | Case No. 2:18-cv-658<br><br>Judge Graham<br><br>Magistrate Judge Jolson |

## OPINION AND ORDER

This matter is before the Court for consideration of the unopposed Motion for Summary Judgment filed by Defendant Ohio Department of Youth Services, Circleville Juvenile Correctional Facility ("Defendant") seeking summary judgment on Plaintiff Climie Taylor's claims of race discrimination and retaliation. (Def.'s Mot. Summ. J., ECF No. 21.) For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### I. BACKGROUND

The Court will consider the following facts and evidence submitted in support of Defendant's unopposed motion as undisputed. *See* Fed. R. Civ. P. 56(e)(2).

#### A. Factual Background

Plaintiff Climie Taylor, an African American female, is employed by Defendant Ohio Youth Services as an Administrative Professional 1 ("AP1") at the Circleville Juvenile Correctional Facility ("CJCF"). (Taylor Dep. 10–11, ECF No. 20 at 97–98.) Defendant hired Ms. Taylor on December 8, 1992. (Taylor Dep. 14:1–6.)

On June 23, 2015, Ann King was appointed Deputy Superintendent of Operations at CJCF. (King. Aff., Def.'s Ex. 26, ECF No. 20-1 at 455.) Ms. Taylor's clerical position was assigned to Ms. King. (*Id.*) After reviewing the roles of clerical staff within the Superintendent's Office and the Operations Department, Ms. King determined that her position did not require clerical staff. (*Id.*) On July 29, 2015, Ms. King reassigned Ms. Taylor to report directly to Operations Administrator, Adrian Bowens. (*Id.*) Ms. King also learned that Ms. Taylor, a bargaining unit employee, was performing duties belonging to an exempt secretary. (*Id.*) She therefore reassigned those duties to management. (*Id.*) Ms. Taylor responded by filing a grievance, which she later withdrew. (Def's. Ex. 18, ECF No. 20-1 at 406, 410.)

On August 20, 2015, Ms. Taylor was physically reassigned to a different CJCF unit due to a greater need for clerical assistance in that area. (Def.'s Ex. 24, ECF No. 20-1 at 453.) On September 1, 2015, Ms. Taylor filed a grievance against Ms. King, claiming Ms. King reassigned her due to her race. (Def.'s Ex. 20, ECF No. 20-1 at 415–16.) Ms. Taylor later withdrew her second grievance against Ms. King. On September 15, 2015, Ms. Taylor filed a charge of discrimination with the Ohio Civil Rights Commission, claiming Ms. King subjected her to harassment motivated by race by twice reassigning her within the CJCF. (Def.'s Ex. 24, ECF No. 20-1 at 453.)

Throughout these reassignments, Ms. Taylor continued performing clerical duties within her job classification, remained an AP1, and never suffered a reduction in pay. (King Aff.; Taylor Dep. 115.) The Ohio Civil Rights Commission ultimately issued a letter of determination finding that no probable cause existed to issue an administrative complaint against Defendant and dismissed the matter. (Def.'s Ex. 28, ECF No. 20-1 at 460.)

On November 28, 2016, Ms. Taylor applied for an internal Administrative Professional 4 ("AP4") position. (Def.'s Ex. 34, ECF No. 20-1 at 473–78.) For an AP1, such as Ms. Taylor, selection to an AP4 position constitutes a promotion.

Once an internal position closes, Defendant screens the applicants in accordance with its Standard Operating Procedure 103.03.02 on Selection and Promotion of Personnel. (Def's. Ex. 7, ECF No. 20-1.) Defendant first assesses which applicants meet the minimum qualifications for the position. (*Id.* at 356.) The primary applicant pool is then formed from the five highest scoring applicants on the initial screening questionnaire. (*Id.* at 358.) Once the primary applicant pool is identified, an interviewing panel conducts a structured interview of each applicant. (*Id.* at 358–59.) At the conclusion of the interviews, a recommendation for hire is made. (*Id.* at 361.)

As the highest scoring applicant on the initial screening questionnaire, Ms. Taylor was among the primary applicant pool and interviewed for the position on January 17, 2017. (Def.'s Exs. 37 and 38, ECF No. 20-1 at 490–98.) Her interviewing panel consisted of Adrian Bowens, Ann King, Cathy Large, and Phillip Elms. (Bowens Decl. ¶ 3, ECF No. 21-2 at 583.) Ms. Taylor thought the interview went well. (Taylor Dep. 156:15–16.) She thought everyone was polite and cordial, with the exception of Ms. King. (*Id.* at 157:5–6.) Ms. Taylor claims that Ms. King purposely tried to "throw [her] off" by staring at her but concludes that "it did not work." (*Id.* at 157:9–13.)

On January 26, 2017, Ms. King informed Ms. Taylor that she was not selected for the AP4 position. (Def.'s Ex. 29, ECF No. 20-1 at 463.) Instead, the interviewing panel unanimously selected another AP1, Deborah Lynn. (Large Decl. ¶ 5; ECF No. 21-1 at 562; Bowens Decl. ¶ 4.) The panel chose Ms. Lynn because of her previous experience as an AP4 at the now closed Scioto

3

Juvenile Correctional Facility, her twenty-plus years of experience as a Department of Youth Services employee,[1] and her performance during the structured interview. (*Id.*)

Ms. Lynn initially filled the AP4 position reporting to the Direct Deputy Superintendent. (Large Decl. ¶ 7.) After the death of a colleague in another AP4 position, Ms. Lynn moved to that AP4 position. (*Id.*) As a result, the AP4 position Ms. Taylor previously applied for was reopened in November 2017. (*Id.*) By then, Ms. King was no longer employed by Defendant. (*Id.*) Ms. Taylor did not apply for the position. (*Id.*) Another African American female, Danielle Bolden, received the AP4 position. (*Id.*)

On March 6, 2017, Ms. Taylor filed a charge of discrimination, claiming she was denied promotion to AP4 because of her race and as retaliation for filing her 2015 charge of discrimination against Ms. King. (ECF No. 20-1 at 463.) On January 11, 2018, the Ohio Civil Rights Commission issued a Letter of Determination Upon Reconsideration finding no credible information supporting Ms. Taylor allegations of unlawful activity. (ECF No. 20-1 at 518.)

Ms. Taylor received her right to sue letter on April 6, 2018. (*Id.* at 517.) This case arises from Defendant's January 2017 decision to not select Ms. Taylor for the AP4 position.

**B. Procedural Background**

Ms. Taylor filed her amended complaint against Defendant on September 25, 2018, asserting claims of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e, *et seq.* (ECF No. 7.) The parties do not dispute that Ms. Taylor has met the statutory prerequisites to file suit against Defendant. On October 10, 2019, Defendant filed its motion for summary judgment. (ECF No. 21.) Ms. Taylor has not responded to Defendant's motion for summary judgment.

---

[1] Ms. Lynn was hired by Defendant Ohio Department of Youth Services on August 8, 1994. (Def.'s Ex. 42, ECF No. 20-1 at 507.)

## II.  STANDARD OF REVIEW

Defendant has moved for summary judgment on both of Ms. Taylor's claims under Federal Rule of Civil Procedure 56. Under Rule 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A district court considering a motion for summary judgment "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Revis*, 489 F.3d at 279–80 (quoting *Anderson*, 477 U.S. at 251–52).

Even where there is no response in opposition filed, the movant still bears the burden of identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine dispute of material fact. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting Celotex,

477 U.S. at 323)). A court may grant summary judgment only if the motion and the supporting materials demonstrate that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e)(3). Accordingly, the Court has reviewed the evidentiary materials presented by Defendant in accordance with Federal Rule of Civil Procedure 56.

## III. DISCUSSION

### A. Race Discrimination Claim

Ms. Taylor, an African American, claims she was subjected to discrimination when Defendant failed to promote her because of her race. Ms. Taylor premises her claim on her conclusion that Ms. King is a "racist" and "doesn't want a black female as her secretary." (Taylor Dep. 186.) Ms. Taylor claims Ms. King was known for making racist statements around the CJCF, but admits these statements were never made to her. (Taylor Dep. 159–160.) Ms. Taylor was also not present when the racist statements were allegedly made to a co-worker, nor can she recall what was actually said by Ms. King. (*Id.*)

A claim of discrimination may be proven using either direct or circumstantial evidence. *Kuhn v. Washtenaw Cnty.,* 709 F.3d 612, 624 (6th Cir. 2013). "Direct evidence is proof that, if believed, compels the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (internal quotation marks omitted). Where, as here, there is an absence of direct evidence of discrimination, courts apply the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Davis v. Cintas Corp.,* 717 F.3d 476, 491 (6th Cir. 2013).

Under *McDonnell Douglas,* a plaintiff must first make out a prima facie case of discrimination. *Id.* To do so in a failure to promote case, a plaintiff must show that "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was

6

considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *Henry v. Abbott Labs.*, 651 F. App'x 494, 499 (6th Cir. 2016) (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005)).

In the case at bar, Defendant does not dispute the first three prongs. Rather, Defendant takes issue with the fourth prong. Defendant argues that, "[t]he person chosen for the AP4 position was just as, if not more, qualified for the position than Taylor." (ECF No. 21 at 552.) To satisfy the fourth prong under the test articulated by the Sixth Circuit in *White*, "it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications." 429 F.3d at 242. Defendant's concession that Ms. Taylor was just as qualified as Ms. Lynn does exactly that. Moreover, the undisputed record evidence establishes that Ms. Lynn, an applicant outside of Ms. Taylor's protected class, was offered the AP4 position when Ms. Taylor's request for promotion to AP4 was denied. Ms. Taylor has therefore established a prima facie case of racial discrimination in a failure to promote case.

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). "To meet this burden, 'the defendant must clearly set forth, through the introduction of admissible evidence, the reasons' for its decision." *Clay v. UPS*, 501 F.3d 695, 703 (6th Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

Ms. Taylor believes that Defendant lacks a legitimate nondiscriminatory reason for not selecting her for the AP4 position, because she claims to have more education, experience, and a higher score on the initial screening questionnaire than Ms. Lynn. (Taylor Dep. 159, 163, 185–86;

7

ECF No. 20-1 at 463.) While it is undisputed that Ms. Taylor scored higher than Ms. Lynn on the initial screening questionnaire, an applicant's initial score is one of many factors the interviewing panel considers when making a hiring decision. According to Defendant's Standard Operating Procedure on Selection and Promotion of Personnel, an applicant's score on the initial screening questionnaire determines whether he or she is interviewed for the position. During her deposition, Ms. Taylor also agreed that the screening questionnaire determined who would receive an interview. (Taylor Dep. 183:14–18.)

Defendant asserts that it chose Ms. Lynn, because she had over twenty years of experience at the Department of Youth Services and previously worked as an AP4 at the Scioto Juvenile Correctional Facility before it closed, whereas Ms. Taylor lacked AP4 experience. (ECF No. 21 at 553.) The Court finds Defendant has met its burden of production to articulate some legitimate, nondiscriminatory reason for its decision to hire Ms. Lynn for the AP4 position.

Once this burden is met, the burden shifts back to the plaintiff "to show that the nondiscriminatory reason is pretextual and the true motivation for the decision was discriminatory." *White*, 429 F.3d at 245. "Pretext can be shown by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd*, 766 F.3d at 590 (citing *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir. 2003) (en banc)).

Ms. Taylor has not offered any evidence demonstrating that Defendant's stated reason was pretextual. When pointedly asked for evidence of discrimination during her deposition, Ms. Taylor's only identified the candidates' employment applications. (Taylor Dep. 188:12–19.) "Evidence that the plaintiff was more qualified than the successful applicant can in some

circumstances be sufficient to raise a genuine issue of material fact that the employer's proffered explanation is pretextual." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009). But where, as here, "there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006).

Even viewing the evidence in the light most favorable to Ms. Taylor, the Court cannot find that Ms. Taylor's qualifications were so significantly better than Ms. Lynn's such that no reasonable employer would have chosen Ms. Lynn over Ms. Taylor for the AP4 position. The only evidence Ms. Taylor provides in support of her claim that she was the most qualified for the position and was not selected because of her race is that she has worked for Defendant less than two years longer than Ms. Lynn, has an associate's degree, and that she scored higher on the initial screening questionnaire, which she admits only determines the primary applicant pool selected for interviews.

Other than the candidates' employment applications, all that Ms. Taylor has offered this Court is her own subjective belief that she was more qualified than Ms. Lynn, and that she was discriminated against based on her race, because she heard that Ms. King made racist statements to others and concluded that Ms. King would not hire her because of her race. Even setting aside the fact that there were four panel members who made the recommendation to hire Ms. Lynn over Ms. Taylor, Ms. Taylor's subjective belief about Ms. King's motivation is still insufficient to show pretext and overcome Defendant's motion for summary judgment. *Neff v. City of E. Lansing*, 724 F. App'x 448, 452-53 (6th Cir. 2018); *see Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992) (concluding that the plaintiff could not establish pretext based on statements that were

9

"nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law"); *see also Briggs v. Potter*, 463 F.3d 507, 516 (6th Cir. 2006) (stating that a plaintiff's subjective beliefs regarding her "qualifications in relation to those of other applicants, without more, cannot sustain a claim of discrimination" (citation omitted)). Ms. Taylor has therefore not presented sufficient evidence for the Court to conclude that Defendant's stated reason that it hired Ms. Lynn for her twenty-plus years of experience, including her prior experience as an AP4 had no basis in fact, did not actually motivate Defendant, or was insufficient to warrant not hiring her. Consequently, Ms. Taylor has failed to meet her burden of showing pretext.

As Ms. Taylor has not demonstrated a genuine dispute of material fact to support her claim that she was subjected to discrimination when Defendant failed to promote her because of her race, her race discrimination claim fails as a matter of law and warrants summary judgment.

**B. Retaliation Claim**

A Title VII retaliation claim follows the same burden-shifting analysis required for a discrimination claim. *See Laster v. City of Kalamazoo,* 746 F.3d 714, 730 (6th Cir. 2014). Ms. Taylor must establish a prima facie case of retaliation by demonstrating that: (1) she engaged in activity protected by Title VII; (2) her exercise of protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Id.*

At issue here is the fourth prong of Ms. Taylor's retaliation claim. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013). The Sixth Circuit "has generally required the protected activity and adverse action to occur

extremely close in time in order to make that inference." *Henry*, 651 F. App'x at 505 (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). Specifically, the Sixth Circuit "has typically found the causal connection element satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) (collecting cases supporting a time period of six months or less).

Here, Defendant chose not to promote Ms. Taylor on January 26, 2017, well over a year after she filed her September 15, 2015 charge of discrimination against Ms. King. Thus, Ms. Taylor cannot show temporal proximity between her protected conduct and her non-selection for the AP4 position. But a "lapse in time between the protected activity and the adverse employment action does not inevitably foreclose a finding of causality." *Id.* at 335.

"[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action," the employee must also provide "other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525. "Such other evidence of retaliatory conduct has commonly included evidence of additional discrimination occurring between the date at which the employer learned of the protected activity and the . . . adverse employment action." *Id.* at 526.

Ms. Taylor has put forth no evidence of additional discrimination following the filing of her charge of discrimination. Even viewing the evidence in the light most favorable to Ms. Taylor, she fails to establish a genuine dispute of material fact concerning whether Defendant took any materially adverse actions against her because of her protected activity.

Moreover, even if Ms. Taylor had met her burden of establishing a prima facie case of retaliation, Defendant had a legitimate, nondiscriminatory reason for hiring Ms. Lynn instead of Ms. Taylor—she had experience working in the AP4 position, and Ms. Taylor did not. Further

11

continuing the burden shifting analysis, Ms. Taylor cannot meet her burden of demonstrating that Defendant's reasons for choosing Ms. Lynn were pretextual.

As the Sixth Circuit has stated, "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). To survive summary judgment, a rejected applicant "must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext . . ., not that other reasonable decision-makers might have [selected the rejected applicant]." *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 550 (6th Cir. 2004). Here, Ms. Taylor has failed to present a genuine dispute of material fact as to pretext. As such, her retaliation claim also fails as a matter of law and warrants summary judgment.

## IV. CONCLUSION

Defendant's motion (ECF No. 21) is therefore **GRANTED**. Accordingly, Ms. Taylor's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: April 1, 2020